USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/08/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANGELO MAYES,

                       Plaintiff,

   -against-

CITY OF YONKERS et al.,

                       Defendants.

No. 21 Civ. 00823 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

    Plaintiff Angelo Mayes ("Plaintiff") brings this action against the City of Yonkers, Yonkers Police Officer Ford ("Ford"), and ten John/Jane Does (collectively, with the City of Yonkers and Ford, "Defendants") pursuant to 42 U.S.C. § 1983, alleging claims of unlawful search and seizure, false arrest, excessive force, malicious prosecution, malicious abuse of process, denial of a right to a fair trial and denial of equal protection, as well as a number of pendent, corresponding claims under New York state law. (Complaint or "Compl.", ECF No. 1.)

    Presently before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims (the "Motion", ECF No. 29). For the following reasons, the Court GRANTS in part and DENIES in part Defendants' Motion.

BACKGROUND

**I.    Factual Background**

    The parties have submitted briefs, statements of material facts pursuant to Local Civil Rule 56.1, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background. The following facts are undisputed unless otherwise noted.

1

On March 17, 2019, Plaintiff took a bus from near his home in the Bronx to the Macy's Cross County Mall in Yonkers. (Defs. Rule 56.1 Statement of Undisputed Material Facts ("Defs. 56.1") ¶ 1, ECF No. 32.) At Macy's, Plaintiff picked out a number of clothing items and brought the clothes to a dressing room. (*Id.* ¶ 2.) Plaintiff contends that he left the clothes on a rack in the dressing room. (Pltf's Decl. in Opp. to Motion for Summary Judgment "Opp. Decl.", ECF No. 35, Ex. 2 at 13:6-8.) Plaintiff then left the store and was outside on the sidewalk when two Macy's store loss prevention officers approached Plaintiff and escorted him back to the loss prevention office. (Defs. 56.1 ¶ 3.) The Macy's loss prevention office consists of a holding cell with separate offices located to the right and left of the holding cell. (*Id.* ¶ 6.) The loss prevention officers placed Plaintiff in a holding cell in the loss prevention office and called Yonkers Police, while Plaintiff signed a Retail Trespass Complaint Form Letter. (*Id.* ¶¶ 3-4.)

Defendant Ford responded to Macy's after receiving a radio call from headquarters in relation to a report of loss prevention detaining one male shoplifter. (*Id.* ¶ 5.) Upon arriving at the store loss prevention office, Ford saw Plaintiff in a holding cell and spoke to loss prevention officer Anthony Gordon ("Gordon"), who Ford had dealt with in the past in relation to other shoplifting arrests. (*Id.* ¶¶ 6-7.) Gordon advised Ford that he was monitoring the store's video surveillance system when he observed Plaintiff gathering merchandise and proceed to the men's dressing room with the merchandise. (*Id.* ¶ 8.) Gordon observed Plaintiff leave the dressing room without any of the merchandise that he had walked into the dressing room with, and then exit the store. (*Id.* ¶ 9.)

The parties dispute what happened next. Defendants claim that Gordon then informed Ford that merchandise consisting of three pairs of jeans/pants was concealed under Plaintiff's jacket and recovered by the loss prevention officers. (*Id.* ¶ 10.) Ford additionally observed the stolen property recovered from Plaintiff inside the loss prevention office. (*Id.* ¶ 11.) Plaintiff contends, however,

2

that he was "within earshot" of Gordon and Ford's conversation from his holding cell and heard a different version of events. (Opp. Decl. Ex. 2 at 25:8-14.) According to Plaintiff, Gordon told Ford that the loss prevention officers called Yonkers Police "because he [Plaintiff] was in a dressing room and we knew he was going to steal." (*Id.* at 25:22-25.) When asked by Ford if the loss prevention officers had retrieved any stolen property from Plaintiff, Gordon replied "No." (*Id.* at 25:25-26:17.)

The parties agree that Ford then spoke with Plaintiff in the holding cell to obtain his pedigree information, which Ford used to file out the Retail Trespass Complaint Form. (Defs. 56.1 ¶ 12.) Ford then handcuffed Plaintiff inside the holding cell and transported him to Central Booking without incident. (*Id.*) Ford drafted an Incident Report (Motion, Ex. C), which referenced the allegedly stolen merchandise, but, per Yonkers Police Department procedure, left said merchandise with the Macy's loss prevention officers. (*Id.* ¶ 13.)

The following day, Plaintiff was arraigned on a misdemeanor charge of petit larceny in the amount of $488 dollars, which was the total value of the allegedly stolen merchandise. (*Id.* ¶¶ 11, 14.) Plaintiff was given a court appearance ticket directing him to return to the court in two weeks because Macy's representative failed to make an appearance at the arraignment. (*Id.*) At that time, Plaintiff was released from custody. (*Id.*) Two weeks later, Plaintiff returned to court, at which time his petit larceny charge was dismissed by the Westchester County District's Attorney's Office because a Macy's representative failed to appear to sign the accusatory instrument. (*Id.* ¶ 15.)

II.     **Procedural History**

Plaintiff filed this action on January 29, 2021 alleging claims for unlawful search and seizure, false arrest, excessive force, malicious prosecution, malicious abuse of process, denial of a right to a fair trial and denial of equal protection, as well as a number of pendent, corresponding

3

claims under New York state law. (Compl., ECF No. 1.) On December 12, 2022, Defendants filed a memorandum of law in support of the Motion (Def's Mem., ECF No. 29) as well as a reply affirmation (Reply, ECF No. 34). Plaintiff filed a memorandum of law in opposition to the Motion. (the "Opposition" or "Opp.", ECF No. 36.)

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment must be granted if "there is no genuine issue of material fact and ... the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleading[s]," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). The moving party bears the initial burden of demonstrating an absence of genuine issues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is

4

not significantly probative, summary judgment may be granted." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal quotations and citations omitted) (alteration in original).

## DISCUSSION

### I. Summary Judgment Is Granted on Claims Abandoned by Plaintiff

The Defendants argue that summary judgment should be granted on several claims that the Plaintiff did not defend in his Opposition. (Reply at 1.) "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Capak v. Epps*, No. 18-CV-4325 (KHP), 2023 WL 2574879, at *2 (S.D.N.Y. Mar. 20, 2023) (quoting *Xu v. City of New York*, 2020 WL 2088301, at *4 (S.D.N.Y. Apr. 30, 2020)). Defendants make several arguments to which Plaintiff does not respond.

First, Defendants argue that they are entitled to summary judgment on Plaintiff's Eight Cause of Action for malicious prosecution because defendant Ford had probable cause to arrest Plaintiff for petit larceny based on Gordon's testimony that Plaintiff had stolen clothing, and because Ford himself observed the stolen clothes. (Def's Mem. at 4.) Because "[t]he existence of probable cause will defeat a claim of malicious prosecution," *Fabrikant v. French*, 691 F3d 193,215 (2d Cir. 2012), Plaintiff's malicious prosecution claim fails as a matter of law. (Def's Mem. at 4.) Plaintiff did not respond, in any way, to the Defendants' arguments concerning his malicious prosecution claim. Therefore, that claim is deemed abandoned.

Next, Defendants argue that they are entitled to summary judgment on Plaintiff's Tenth Cause of Action for malicious abuse of process because to establish a claim for abuse of process in New York, a plaintiff must prove the defendant "1) employs regularly issued legal process to compel performance or forbearance of some act 2) with intent to do harm without excuse [or]

justification, and 3) in order to obtain a collateral objective that is outside the legitimate ends of the process." (*Id.* at 6 (quoting *Savino v. City of New York*, 331 F.3d 63, at 76 (2d Cir. 2003)).) Because there is no evidence that Ford "acted without justification for the purpose of obtaining a collateral objective in arresting [P]laintiff," Plaintiff's claim for malicious abuse of process fails as a matter of law. (*Id.*) Plaintiff did not respond, in any way, to the Defendants' arguments concerning his malicious abuse of process claim. Therefore, that claim is deemed abandoned.

Next, Defendants argue that they are entitled to summary judgment on Plaintiff's Fourteenth Cause of Action for denial of equal protection of the laws because such a claim requires a showing that the aggrieved was treated adversely "compared with other similarly situated individuals [and that] such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." (*Id.* at 7 (quoting *Miner v. Clinton*, 541 3d 464, 474 (2d Cir. 2008)). The record is devoid, however, of any allegations that Ford treated Plaintiff unfairly on account of an impermissible consideration, such as race. (*Id.*) Plaintiff did not respond, in any way, to the Defendants' arguments concerning his denial of equal protection of the laws claim. Therefore, that claim is deemed abandoned.

Next, Defendants argue that they are entitled to summary judgment on Plaintiff's Fifteenth Cause of Action for conspiracy to interfere with civil rights because "[t]o prove a § 1983 conspiracy, a plaintiff must show: 1) an agreement between two or more state actors or between a state actor and a private entity; 2) to act in concert to inflict an unconstitutional injury; and 3) an overt act done in furtherance of that goal causing damages" (*Id.* at 8 (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)), but Plaintiff presents no record evidence that "Ford was motivated by race or some other impermissible consideration in arresting [P]laintiff." (*Id.*)

6

Plaintiff did not respond, in any way, to the Defendants' arguments concerning his conspiracy to interfere with civil rights claim. Therefore, that claim is deemed abandoned.

Next, Defendants argue that they are entitled to summary judgment on Plaintiff's Seventeenth Cause of Action for failure to intervene because such a claim seeks to hold an officer liable for preventable harm caused by the actions of other officers. (*Id.* at 10.) "[W]here the officer is a direct participant in the allegedly unlawful conduct, [however] the failure to intervene theory of liability is inapplicable." (*Id.* (quoting *Sanabria v. Detective Shawn Tezlof*, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016).) "[B]ecause liability is sought as a result of [] Ford's direct actions and not those of others, the failure to intervene claim fails as a matter of law." (*Id.*) Plaintiff did not respond, in any way, to the Defendants' arguments concerning his failure to intervene claim. Therefore, that claim is deemed abandoned.

Next, Defendants argue that they are entitled to summary judgment on Plaintiff's Nineteenth Cause of Action for *Monell* liability because Plaintiff failed to adequately allege the existence of a municipal policy or custom that caused his injuries, and instead only pled conclusory, boilerplate allegations. (*Id.* at 10-11 (citing *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).) Plaintiff did not respond, in any way, to the Defendants' arguments concerning his *Monell* claim. Therefore, that claim is deemed abandoned.

Finally, the Defendants argued in their moving papers that Plaintiff's Sixth Cause of Action for excessive force fails because "[t]he gravamen of [P]laintiff[']s excessive force claim is that because he was falsely arrested, [] Ford used excessive force by placing him in handcuffs during his arrest." (*Id.* at 9.) "Excessive force claims under Section 1983 are judged under the 'objective reasonableness' standard of the Fourth Amendment." (*Id.* (quoting Graham v. Connor, 490 U.S. 386, 396 (1989).) Because, according to Defendants, Ford had probable cause to arrest Plaintiff

7

for petit larceny, it was objectively reasonable for him "to place [P]laintiff in handcuffs to effectuate his lawful arrest." (*Id.*) Plaintiff did not respond to this argument in his Opposition, although Defendants also omitted reference to this claim in the Reply. Nevertheless, as Plaintiff did not provide any response to Defendants' arguments, the Court will assume that Plaintiff has too abandoned this claim.

In summary, the Court finds that Plaintiff abandoned the Sixth, Eighth, Tenth, Fourteenth, Fifteenth, Seventeenth, and Nineteenth Causes of Action and Defendants are therefore entitled to summary judgment on these claims. Because it finds that Plaintiff has abandoned the aforementioned claims, the Court does not reach the merits of Defendants' arguments against them.

## II.   Notice of Claim for State Law Claims

Plaintiff brings his First, Third, Fifth, Seventh, Ninth, Eleventh, Thirteenth, Sixteenth, and Eighteenth Causes of Action against the Defendants for various state law claims under New York law. The Defendants argue that Plaintiff's state law claims should be dismissed for failing to serve a timely notice of claim prior to asserting these claims against the Defendants. (Def's Mot. at 2-3.) The Westchester County Supreme Court previously denied Plaintiff leave to serve a late notice of claim. (*See* Motion, Ex. G.)

New York law "provides that no tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless: (1) a notice of claim has been served against the [municipality]; (2) the [municipality] has refused adjustment or payment of the claim; and (3) the action is commenced within one year and ninety days after the event upon which the claim is based occurred." *Gibson v. Comm'r of Mental Health,* No. 04–CV–4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (citing N.Y. Gen. Mun. Law § 50–i). Plaintiffs are required

8

to serve the notice of claim "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50–e(1)(a). Notice of claim requirements are construed strictly by New York state courts and "[f]ailure to comply with [them] ordinarily requires dismissal." *Hardy v. N.Y.C. Health & Hosps. Corp.,* 164 F.3d 789, 793 (2d Cir. 1999). In addition, "[i]t is well settled that federal courts entertaining state law claims against municipalities are obligated to apply any applicable state law notice-of-claim provisions." *Jones v. City of New York*, No. 1:19-CV-10424 (MKV), 2021 WL 4482150, at *5 (S.D.N.Y. Sept. 30, 2021) (citation omitted). Accordingly, "[w]hile New York's notice of claim requirements are not applicable to section 1983 claims brought in federal court, the requirements do apply to state law personal injury claims that are brought in federal court as related to section 1983 cases." *In re Dayton*, 786 F. Supp. 2d 809, 823 (S.D.N.Y. 2011) (citation and alterations omitted).

Here, Plaintiff has failed to serve timely notice of any of his state law claims, and "makes no argument to refute [D]efendants' claim that summary judgment should be granted as to the state law claims for failure to provide proper notice." *See Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) (granting defendants' motion for summary judgement against plaintiff's state law claims). The Court therefore grants Defendants' motion to dismiss Plaintiff's state law claims for failure to comply with New York's notice requirement.

### III.   False Arrest and Search & Seizure

Plaintiff brings his Second and Fourth Causes of Action against Ford and the John/Jane Doe defendants for unlawful search and seizure and false arrest, respectively.

The Fourth Amendment protects an individual's right to be free from unreasonable searches, *United States v. Wilson*, 699 F.3d 235, 242 (2d Cir. 2012) (citing U.S. Const. amend. IV), including arrest without probable cause, *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

Probable cause is an absolute defense to a false arrest claim. *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)). "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). In assessing the existence of probable cause, the reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006). "The question is whether the facts known to the arresting officer, at the time of the arrest, objectively support a finding of probable cause to support the arrest." *Gonzalez*, 728 F.3d at 155.

"Probable cause is a mixed question of law and fact[.]" *Dufort* v. *City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (citation omitted). Generally speaking, "[q]uestions of historical fact regarding the officers' knowledge at the time of arrest are to be resolved by the jury." *Id.* (citation omitted). "However, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *McKinley v. Crevatas*, No. 20 CIV. 3606 (KPF), 2023 WL 4364182, at *6 (S.D.N.Y. July 6, 2023) (citation and internal quotation marks omitted). "Furthermore, even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events establishes the existence of probable cause to arrest." *Drummond v. Castro*, 522 F. Supp. 2d 667, 673 (S.D.N.Y. 2007) (citations omitted). Finally, "[a]s a general matter, police officers are 'entitled to rely on the allegations of fellow

10

police officers' in making a probable cause determination." *McKinley*, 2023 WL 4364182, at *6 (citation omitted).

As an initial matter, there is a degree of factual overlap between Plaintiff's unlawful search and seizure claim and his false arrest claim, because defendant Ford only searched Plaintiff incident to his arrest. Plaintiff does not seem to contest that a search was performed pursuant to his arrest. In fact, he does not discuss the allegedly unlawful search in his Opposition, but rather cursorily groups it with his discussion of his false arrest claim. For purposes of this discussion, the Court construes Plaintiff's unlawful search and seizure claim to rest upon his false arrest claim. In other words, the Court understands Plaintiff to contend that if the arrest itself was not supported by probable cause, neither was the search incident to it.

Defendants argue that Ford had probable cause to arrest and search the Plaintiff based on Gordon's alleged account to Ford that three pairs of jeans/pants were recovered from under Plaintiff's jacket and For's own observation of the stolen property recovered from Plaintiff. (Def's Mem. at 4.) Plaintiff counters that, in his version of events, Ford lacked probable cause to arrest and search Plaintiff because Gordon advised Ford that no stolen items were recovered from Plaintiff, and Gordon had only called the police because he believed Plaintiff was *going* to steal. (Opp. at 8.) Defendants reject Plaintiff's version of events as "completely self-serving" and in conflict with Ford's Incident Report (Motion, Ex. C). (Reply ¶ 5.) In the alternative, Defendants contend that even if store security had never recovered merchandise from Plaintiff, Ford still had arguable probable to arrest Plaintiff based on Gordon's account of events, and Ford is therefore at a minimum entitled to qualified immunity. *(Id.* ¶ 6.)

The Court finds that genuine issue of material fact exists as to the "facts available to the [Ford] at the time of the arrest and immediately before it." *See Panetta*, 460 F.3d at 395. The

11

parties dispute what facts Ford relied on in arresting Plaintiff. Ford contends he was both told by Gordon that Plaintiff stole the clothes and observed himself the allegedly stolen merchandise recovered from Plaintiff. By contrast, Plaintiff claims that no such merchandise was recovered, and that Gordon told Ford the opposite – that Plaintiff had not yet committed a crime, but that he may in the future. (*See* Opp. Decl., Ex. 2 at 25:22-25.) The case law is clear, however, that a police officer only has probable cause for an arrest when he has knowledge or reasonably trustworthy information "that the person to be arrested *has* committed or *is* committing a crime." *Swartz*, 704 F.3d at 111. Construing the facts in a light most favorable to Plaintiff, the Court concludes that a rational jury could find, based on Plaintiff's testimony, that Ford did not have probable cause to arrest Plaintiff.

Because a dispute exists as to what facts Ford relied on to demonstrate probable cause, the existence of probable cause cannot be resolved as a matter of law by the Court. Although Defendants request that the Court disregard this portion of Plaintiff's testimony as "self-serving," the Court declines to do so. Such a credibility determination must be left for the jury. *See Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) (finding that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (citation omitted). As the Second Circuit has explained,

> To hold, as [D]efendants ask us to do, that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts — at an inappropriate stage — into an adjudication of the merits. Such a radical change in the courts' role would be inappropriate not just in the discrimination context, but everywhere.

*Danzer* v. *Norden Sys., Inc.,* 151 F.3d 50, 57 (2d Cir. 1998) (internal citations omitted); *see also Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016) ("At summary judgment, [plaintiff] was entitled to rely on his own testimony" to defeat defendant's motion); *Sloane v. Getz*, 150 F. App'x 86, 88

(2d Cir. 2005) (vacating grant of unopposed motion for summary judgment where the record contained deposition testimony creating a material issue of disputed fact).

The jury could credit Plaintiff's account that he left the clothes in the store and was arrested based on Gordon's belief that he would steal in the future. "If the jury were to make [this] finding, it could also find that [Ford] lacked probable cause to arrest Plaintiff. These factual disputes concerning the circumstances of Plaintiff's arrest preclude summary judgment on his false arrest claim." *Taylor v. City of New York*, No. 19 CIV. 6754 (KPF), 2022 WL 744037, at *10 (S.D.N.Y. Mar. 11, 2022). The Court's task here is not to assess the strength of Plaintiff's claims regarding the conversation he overheard between Ford and Gordon. *See, e.g. Martinez v. City of New York*, 684 F. App'x 90, 92–93 (2d Cir. 2017) ("To be sure, other record evidence casts doubt on [plaintiff's] claim that the oil and grease rose to the level of unseaworthiness...But decisions about whether to credit and how to weigh conflicting evidence are generally left to the jury.") The Court merely concludes, as it must, that if a jury were to fully credit Plaintiff's account and draw all inferences favorable to him, it cannot be said as a matter of law that Ford had probable cause to arrest and search Plaintiff. *See id.*

Accordingly, Plaintiff has raised a triable issue of fact that must be resolved by the jury and Defendants are not entitled to summary judgment on Plaintiff's claims of unlawful search and seizure and false arrest. Because the Court holds that Plaintiff has issued a genuine issue of material fact regarding the allegedly stolen merchandise and Gordon's account to Ford, it does not reach Defendants' arguments about arguable probable cause and qualified immunity.

### IV.    Right to Fair Trial

Plaintiff brings his Twelfth Cause of Action against Ford and the John/Jane Doe defendants for denial of his right to a trial. In response, the Defendants argue that the Plaintiff has failed to

satisfy the requirements for his claim of denial of the right to a fair trial. A person suffers the denial of the right to a fair trial if: "(1) [an] investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of N.Y.,* 486 Fed. Appx. 149, 152 (2d Cir. 2012) (summary order).

As with Plaintiff's claims for unlawful search and seizure and false arrest, there are genuine issues of material fact as to whether Ford, who is an investigating officer, provided to the prosecution false information that served as the basis for the Plaintiff's prosecution on petit larceny charges. Construing the evidence in the light most favorable to the Plaintiff, the evidence indicates that Gordon could have told Ford that the loss prevention officers only called Yonkers Police because they "knew he [Plaintiff] was going to steal." (Opp. Decl., Ex. 2 at 25:22-25.) Ford could have further observed no stolen merchandise and therefore lied in his Incident Report, which "related that the suspect had concealed the above listed merchandise under his jacket and it was all recovered at the scene." (Motion, Ex. C at 3.) Accordingly, a question of fact remains regarding whether Ford provided false information to the District Attorney's Office that caused the Plaintiff's deprivation of liberty. *See, e.g., Douglas v. City of N.Y.,* 595 F.Supp.2d 333, 347 (S.D.N.Y. 2009) ("[A] reasonable jury could find defendants…forwarded false information to the Bronx district attorney, thereby violating plaintiff's constitutional right to a fair trial."); *Stewart v. City of N.Y.,* No. 06 Civ. 15490, 2008 WL 1699797, at *10 (S.D.N.Y. Apr. 9, 2008) ("[T]here is, at a minimum, a question of fact as to whether [the officer] falsely told an assistant district attorney and the grand jury that [the plaintiff] had acted as a lookout on the day of the drug sale.").

As discussed earlier, Defendants urge the Court to ignore Plaintiff's account of the conversation between Gordon and Ford because it is "completely self-serving" (Reply at 2), but,

14

as a general matter, courts may not disregard a party's testimony on summary judgment simply because the evidence favors that party that offered it. *See Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (holding that "a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact"); *Baksh v. City of New York*, No. 15CV7065NGGST, 2018 WL 1701940, at *8 (E.D.N.Y. Mar. 31, 2018) ("Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial") (quoting *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005)). Plaintiff has raised a material issue of fact as to whether Ford fabricated the reference to stolen merchandise in his Incident Report, and it is not within the purview of the Court at this stage of the litigation to make a credibility assessment regarding Plaintiff's account. If a jury finds Plaintiff credible, it could find that Ford violated his right to a fair trial by fabricating evidence and forwarding it to prosecutors.

Plaintiff has therefore raised a material issue of fact precluding summary judgment on this fair trial claim.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

Defendants' motion for summary judgment is GRANTED with respect to the First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, and Nineteenth Causes of Action against all defendants. Plaintiff's First, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, and Nineteenth Causes of Action are dismissed with prejudice.

Defendants' motion for summary judgment is DENIED with respect to the Second, Fourth, and Twelfth Causes of Action against Ford and the John/Jane Doe defendants. The Clerk of Court

is directed to terminate Defendant City of Yonkers. A telephonic Pretrial Conference is scheduled for January 16, 2024 at 10:00 am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (877) 336-1839; (2) Enter the Access Code: 1231334 #; (3) Press pound (#) to enter the teleconference as a guest. The Clerk of Court is directed to terminate the motion at ECF No. 29.

Dated: December 08, 2023  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge